# CASE NOS. 24-6006, 24-6033
_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT


**AVON CAPITAL, LLC, a Wyoming Limited Liability Company,
Intervenor – Appellant,**

**vs.**

**UNIVERSITAS EDUCATION, LLC,
Petitioner/Judgment Creditor - Appellee.**
_____

**Appealed from the United States District Court
for the Western District of Oklahoma
Honorable Joe Heaton, United States District Judge
USDC Case No. 5:14-FJ-00005-HE**

_____

## OPPOSITION BRIEF FOR APPELLEE UNIVERSITAS EDUCATION, LLC
_____


Joseph L. Manson, III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron Street
Alexandria, VA 22314
Telephone: (202) 674-1450
Facsimile: (703) 430-1642
jmanson@jmansonlaw.com

*Attorney for Petitioner-Appellee
Universitas Education, LLC*


ORAL ARGUMENT NOT REQUESTED

# TABLE OF CONTENTS

**STATEMENT ON PRIOR OR RELATED APPEALS**................................xi

**GLOSSARY**................................................................................xiii

**STATEMENT OF MEMBER JURISDICTION**..............................xv

**CORPORATE DISCLOSURE STATEMENT**..............................xv

**INTRODUCTION**.........................................................................1

**JURISDICTIONAL STATEMENT**................................................5

**STATEMENT OF THE CASE**.......................................................6

    I.      **The Three Avon Capital Entities**........................................6

    II.     **The SDNY Court Enters Judgment Against Avon Capital**..................7

    III.    **Criminal Prosecution Concerning the Stolen Insurance Proceeds**.......7

    IV.    **The District Court Garnishment Proceeding**........................8

    V.     **The First Consolidated Appeal**.........................................11

    VI.    **Further Proceedings Before the District Court and the Instant Appeal**................................................................12

    VII.   **Rationale for Receivership**..............................................15

         a.   Carpenter's History of Evading Collection Efforts............15

         b.   Avon-Wyoming's Fraud and Mismanagement...................17

**SUMMARY OF THE ARGUMENT**................................................18

    I.      **The District Court Correctly held that it Regained Jurisdiction over the Case after Universitas Refiled its Judgment and it did not Err in**

Readopting the Magistrate Report and Recommendation and Appointing a Receiver (Issues One through Four)................................19

II. The District Court did not Abuse its Discretion in Appointing a Receiver over Avon-Wyoming (Issues Five and Six)..........................21

ARGUMENT.....................................................................................................23

I. The District Court Correctly Found that it Possessed Jurisdiction to Enter an Order Appointing a Receiver..................................................23

   a. The District Court did Not Improperly Fail to Follow the Mandate.....24

      i. Standard of Review....................................................................24

      ii. Legal Standard..........................................................................24

      iii. The District Court Correctly Continued Proceedings after the Case was Remanded to the District Court. ...............................25

   b. The District Court did Not Improperly Readopt its February 11, 2021 Order Because it Reacquired Subject Matter Jurisdiction and Personal Jurisdiction after Universitas Refiled its Judgment and the Claims were no Longer Moot. ................................................................................27

      i. Standard of Review....................................................................27

      ii. Legal Standard..........................................................................28

      iii. The District Court Properly Found that it Reacquired Subject Matter Jurisdiction over the Case. ............................................30

   c. The District Court Reacquired Personal Jurisdiction. .........................33

   d. The District Court did Not Improperly Find that Refiling of the Judgment in the Underlying Case Revived the Judgment....................35

      i. Standard of Review....................................................................35

      ii. Legal Standard..........................................................................35

     *iii. The District Court Properly Found that it Reacquired Subject Matter Jurisdiction over the Case.* ...........................................36

II.    **The District Court's Appointment of a Receiver is not Precluded by 18 O.S. § 2034**...........................................................................39

    a.  Standard of Review.................................................................39

    b.  18 O.S. § 2034 Did not Prevent Recovery of the Insurance Portfolio or Preclude Receivership.....................................................39

    c.  18 O.S. § 2034 Did not Limit the Scope of Receivership.................42

    d.  Avon Wyoming's Caselaw Did not Demonstrate that the District Court Abused its Discretion.......................................................42

III.   **The District Court Did not Abuse its Discretion by Placing Avon-Wyoming in Receivership Pursuant to 12 O.S. § 1551**.......................43

    a.  Standard of Review ..............................................................43

    b.  Avon-Wyoming Forfeited and/or Waived All Arguments Concerning its Placement in Receivership.............................................44

    c.  Receivership was Proper Pursuant to 12 O.S. § 1551.......................44

    d.  The District Court did not Abuse its Discretion by Finding Receivership was Appropriate. ..............................................................49

       *i. Avon-Wyoming's History of Fraud Confirms that Receivership was Proper.* ...........................................................................50

       *ii. Insolvency Confirms the Receivership was Proper*....................53

       *iii. The Imminent Danger that Property Will be Removed Confirms that that Receivership was Proper*...........................................53

    e.  The Scope of the Receivership was Proper.........................................54

**CONCLUSION**................................................................................55

**STATEMENT REGARDING ORAL ARGUMENT**.........................................56

**CERTIFICATE OF COMPLIANCE**..................................................................56

# TABLE OF AUTHORITIES

**Cases:**

*Acevedo-Garcia v. Vera-Monroig*, 368 F.3d 49 (1st Cir. 2004)................................46

*Affinion Loyalty Grp., Inc. v. Maritz*, Inc., No. 04-360-JJF, 2006 U.S. Dist. LEXIS
32311 (D. Del. May 22, 2006).......................................................................30

*Ali v. City of Chicago*, 34 F.4th 594 (7th Cir. 2022)....................................................30

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)..........................................................34

*Anglo-American Royalties Corp. v. Brentall*, 1934 OK 53, 29 P.2d 120 (Okla.
1934)................................................................................................................47

*Audubon of Kansas, Inc. v. United States' Dep't of Interior*,
67 F.4th 1093 (10th Cir. 2023)........................................................................28

*Bayshore Ford Truck Sales. Inc. v. Ford Motor Co.*, 471 F.3d 1233 (11th Cir.
2006)..............................................................................................................34

*Big Cat Rescue Corp. v. G.W. Exotic Animal Mem'l Found.*, No. CIV-14-377-C,
2016 U.S. Dist. LEXIS 198365 (W.D. Okla. Mar. 14, 2016).......................51

*Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760 (10th Cir. 2019)......45, 50

*Blue Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343 (11th Cir. 2016).......24

*Bowles v. Grant Trucking, LLC*, 842 F. App'x 236 (10th Cir. 2021).......................51

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213 (10th Cir. 2006)....................30, 33

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081 (10th Cir. 2017)......................................................................25

*Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976 (10th Cir. 1994)..........46

*Carney v. Adams*, 141 S. Ct. 493 (2020)..................................................................28

*Caterpillar Inc. v Lewis*, 519 U.S. 61 (1996)................................................................29

*Chafin v. Chafin*, 568 U.S. 165 (2013)...................................................................28

*Corbin v. Blankenburg*, 39 F.3d 650 (6th Cir. 1994)................................................30

*Dish Network Corp. v. Arrowood Indem., Co.*, 772 F.3d 856 (10th Cir. 2014).........24

*Doe v. Univ. of Denver*, 952 F.3d 1182 (10th Cir. 2020)..........................................24

*EarthGrains Baking Cos. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK,
      2018 U.S. Dist. LEXIS 188349 (D. Utah Nov. 2, 2018)................................48

*Emplrs. Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153 (10th Cir. 2010).........27

*First Nat'l Bank of Vinita v. Energy*, No. CJ-202001487, 2020 Okla. Dist. 4644
      (Dist. Ct. Okla. July 10, 2020)........................................................................41

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013)......................................28

*Hansjurgens v. Bailey*, 90 F.4th 1158 (11th Cir. 2024).......................................35, 38

*Hellebust v. Brownback*, 824 F. Supp. 1524 (D. Kan. 1993)....................................45

*Hirschfield v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
      14 F.4th 322 (4th Cir. 2021)................................................................26, 28, 29

*Hsin-Yi Wu v. Colo. Reg'l Ctr. Project Solaris LLLP*, Civil Action No. 19-cv-02443-
      RM-STV, 2021 U.S. Dist. LEXIS 38484 (D. Colo. Mar. 2, 2021)...............53

*Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128 (10th Cir. 2001).............24-25

*In re Rumsey Land Co.*, 944 F.3d 1259 (10th Cir. 2019)....................................43, 44

*Ins. Corp. of Ir. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694 (1982).........34

*Jones v. Dalrymple*, 679 F. App'x 668 (10th Cir. 2017).........................................28

*Kahn v. Bank of N.Y. Mellon*, 525 F. App'x 778 (10th Cir. 2023).........................27

*Liberty Fed. Sav. Bank v. Jake Dev., L.L.C.*, No. CJ-2010-5687, 2010 Okla. Dist.
   LEXIS. 768 (Dist. Ct. Okla. July 22, 2010)....................................................41

*Little v. Budd Co.*, 955 F.3d 816 (10th Cir. 2020)....................................................43

*Mattingly Law Firm, P.C. v. Henson*,
   2020 OK CIV APP 19, 466 P.3d 590 (Okla. Civ. App. 2020)...............40, 41

*McCarthy v. Johnson*, No-98-4003,
   1999 U.S App. LEXIS 1519 (Feb. 3, 1999) (unpublished)...............21, 35, 37

*Mullaney v. Anderson*, 342 U.S. 415 (1952)...........................................20, 29, 38, 39

*Okla. Co. v. O'Neil*, 1968 OK 63, 440 P.2d 978 (Okla. 1968).....................42, 47-48

*Procter & Gamble Co. v. Haugen*, 317 F.3d 1121 (10th Cir. 2003).........................25

*Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7th Cir. 1993).................32, 35

*Rio Grande v. Oliver*, 57 F4th 1147 (10th Cir. 2023).............................................27

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005)..........................................................20, 30, 32

*Scottsdale Ins. Co. v. Tolliver*, No. 04-cv-0227-CVE-FHM, 2012 U.S. Dist. LEXIS
   62525 (N.D. Okla., May 4, 2012).................................................................40

*Scottsdale Ins. Co. v. Tolliver*, No. 04-cv-0227-CVE-FHM, 2012 U.S. Dist. LEXIS
   19686 (N.D. Okla. Jan. 11, 2012).................................................................40

*Sec. Investor Prot. Corp. v. Institutional Secs. of Colo.*,
   37 F. App'x 423 (10th Cir. 2002)..............................................................37-38

*SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019).........................................39, 44, 45

*SEC v. Wing*, 599 F.3d 1189 (10th Cir. 2010)....................................................41, 54

*Semtek Int'l, Inc. v. Lockheed Martin Corp*, 531 U.S. 497 (2001)...........................30

*Solidfx, LLC v. Jeppesen Sanderson, Inc.*,
    823 F. App'x 559 (10th Cir. 2020)......................................................19, 24, 25

*Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 2013 OK CIV APP 87, 313
    P.3d 289 (Okla. App. 2013)....................................................................42, 43

*State ex rel. Barnett v. Creek Realty Co.*, 1933 OK 500,
    30 P.2d 160 (Okla. 1933)........................................................................49, 53

*Sys. Div., Inc. v. Teknek Elecs., Ltd.,*253 F. App'x 31 (Fed. Cir. 2007)...................52

*Taracorp, Ltd. v. Dailey*, 2018 OK 32, 419 P.3d 217
    (Okla. 2018).........................................................................31, 32, 36, 37, 38

*Truett v. Freedom Leaf*, 2021 OK CIV APP 26, 495 P.3d 153
    (Okla. Civ. App. 2021)...................................................................................39

*Tulsa Torpedo Co. v. Kennedy*, 1928 OK 383, 268 P. 205 (Okla. 1928)................54

*United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020) (unpublished)........xii, xiv, 9

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016)....xiv, 8, 18

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)........................................28

*United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020)..............................54

*United States v. Walker*, 918 F.3d 1134 (10th Cir. 2019)........................................25

*United States v. West*, 646 F.3d 745 (10th Cir. 2011)............................................25

*Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S.
    App. LEXIS 20356 (10th Cir. Aug. 4, 2023).........................xiv, 12, 13, 26, 31

*Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S.
    App. LEXIS 17968 (10th Cir. July 13, 2023).........................xiv, 12, 26, 27, 33

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 5:14-fj-00005, 2024 U.S. Dist.
    LEXIS 7240 (W.D. Okla. Jan. 4, 2024)..................................................45, 49

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-0005-HE, 2021 U.S. Dist.
LEXIS 194507 (W.D. Okla. Aug. 15, 2023)..................................................xiii

*Universitas Educ., LLC v. Grist Mill Capital, LLC*, No. 21-2690(L),
2023 U.S. App. LEXIS 4257 (2d. Cir. Feb. 23, 2023) (unpublished)...........xii

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012)...................................7

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)............................11

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014).......................xiv, 7

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP,
2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014)................................2

*Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62 (2d Cir. 2013)..........xiii

*Vote Solar v. City of Farmington*, 2 F.4th 1285 (10th Cir. 2021)............................35

*Wei v. Univ. of Wyo. College of Health Sch. Pharm.*,
759 F. App'x 735 (10th Cir. 2019)................................................................24

*Wells Fargo Bank, N.A. v. Mesh Suture*, No. 19-CV-03218-PAB-GPG, 2020 U.S.
Dist. LEXIS 184773 (D. Colo. Feb. 10, 2020)..............................................48

*Winter v. N.M. Dep't of Workforce Sols.*, No. 23-2014,
2023 U.S. App. LEXIS 34144 (10th Cir. Dec. 26, 2023) (unpublished)........28

*Yorkshire West Capital, Inc. v. Rodman*, 149 P.3d 1088 (Okla. Civ. App. 2006).....36

**Federal Statutes:**

28 U.S.C. § 1292(a) (2018)........................................................................................5

28 U.S.C. § 1331 (2018)............................................................................................5

28 U.S.C. § 1332 (2018)............................................................................................5

28 U.S.C. § 1963 (2018)............................................................................31

**State Statutes:**

12 Okla. Stat. § 1551..............................22, 43, 44, 45, 46, 47, 48, 49

18 O.S. § 2034................................................21, 22, 39, 40, 41, 42, 43

N.Y. C.P.L.R. § 211(b)....................................................................13, 31

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 62.......................................................................................47

Fed. R. Civ. P. 69....................................20, 31, 32, 35, 37, 38, 39, 40, 44

**Federal Rules of Appellate Procedure:**

Fed. R. App. P. 26.1..................................................................................xv

Fed. R. App. P. 28......................................................................................46

Fed. R. App. P. 32.1..................................................................................21

**Local Rules:**

10th Cir. R. 32.1.......................................................................................21

# STATEMENT ON PRIOR OR RELATED APPEALS

Appeal Nos. 24-6006 and 24-6033 were filed by Avon Capital. LLC, a Wyoming limited liability company ("Avon-Wyoming") and concern the appointment of a receiver over Avon-Wyoming and the clarification of the Receiver's authority.

This consolidated appeal is related to Appeal Nos. 23-6125 and 23-6167 which were filed by SDM Holdings, LLC, an Oklahoma limited liability company ("SDM-Oklahoma") and have been consolidated with Appeal Nos. 23-6126 and 23-6168 filed by Appellant Avon Capital, LLC relating to the imposition of alter ego liability on Avon-Wyoming in the underlying case.

This Court has previously heard and decided Appeal No. 21-6044 filed by Avon Capital, LLC, and consolidated with Appeal No. 21-6049 filed by SDM-Oklahoma. The Court also consolidated related appeals Nos. 21-6133 and 21-6134, which concerned the appointment of a receiver to manage Avon-Wyoming. In deciding those appeals, this Court held that there was no case or controversy at the time that the United States District Court for the Western District of Oklahoma ("District Court") entered its order on summary judgment, vacated that order as moot, and remanded to the District Court for further proceedings.

Additionally, this Court previously decided Appeal No. 22-6038, which concerned the authority of Mr. Sandberg to file motions and other documents on

behalf of SDM-Oklahoma during the pendency of the receivership of Avon-Wyoming. The Court affirmed the lower court's judgment and found that Mr. Sandberg lacked authority to file on SDM's behalf.

There are also prior related appeals in the Second Circuit Court of Appeals. Appeal No. 19-70-cr concerns the criminal prosecution regarding certain facts at issue in this proceeding. *See United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020) (unpublished), *cert. den.* 141 S. Ct. 820 (2020). Appeal No. 12-3504-cv concerns a prior attempt to vacate the judgment underlying this proceeding. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62 (2d Cir. 2013) (unpublished). Appeal Nos. 21-2690 and 21-2691 involved an attempt to vacate the judgment entered in the District Court for the Southern District of New York. *Universitas Educ., LLC v. Grist Mill Capital, LLC*, No. 21-2690(L), 2023 U.S. App. LEXIS 4257 (2d. Cir. Feb. 23, 2023) (unpublished).

# GLOSSARY

"District Court" refers to the United States District Court in the Western District of Oklahoma presiding over the underlying garnishment proceeding. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-0005-HE, 2021 U.S. Dist. LEXIS 194507 (W.D. Okla. Aug. 15, 2023) (unpublished).

"First Consolidated Appeal" means the prior appeals before this Court with Appeal Nos. 21-6044, 21-6049, 21-6133, and 21-6134, which was decided on August 4, 2023 and for which the mandate was issued on September 28, 2023.

"July 13 Decision" refers to the Order and Judgment of this Court dated July 13, 2023 in the First Consolidated Appeal. *Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S. App. LEXIS 17968 (10th Cir. July 13, 2023) (unpublished).

"August 4 Decision" refers to the Order and Judgment of this Court dated August 4, 2023 in the First Consolidated Appeal, which replaced the July 13 Decision. *Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S. App. LEXIS 20356 (10th Cir. Aug. 4, 2023) (unpublished).

"SDNY Court" refers to the United States District Court in the Southern District of New York that entered the judgment being executed in the underlying garnishment proceeding. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014)

(unpublished). The phrase "SDNY Proceedings" refers to proceedings in the SDNY Court.

"CT Court" refers to the United States District Court in the District of Connecticut that presided over the criminal prosecution regarding the facts at issue in the SDNY Court. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020).

"Avon-Wyoming" refers to Avon Capital, LLC, a Wyoming LLC.

"Avon-Connecticut" refers to Avon Capital, LLC, a Connecticut LLC.

"Avon-Nevada" refers to Avon Capital, LLC, a Nevada LLC.

SDM-Oklahoma refers to SDM Holdings, LLC, an Oklahoma limited liability company.

SDM-Connecticut refers to SDM Holdings, LLC, a Connecticut limited liability company.

"J.A." refers to the parties' Joint Appendix filed on April 15, 2024.

"Universitas" refers to Appellee Universitas Education, LLC.

## STATEMENT OF MEMBER JURISDICTION

Universitas Education, LLC (hereinafter "Universitas") hereby discloses its members and their state of citizenship:

- Sharon Seibert – New York

- Donna Vassar – New York

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Universitas hereby states that it has no parent corporation and that no publicly held company owns more than 10% of its stock.

## **INTRODUCTION**

This appeal marks the second time that the issue of the receivership over Avon Capital, LLC has been before this Court. Previously, this Court vacated the District Court's findings of alter ego liability on jurisdictional grounds as moot but did not address the substantive issues underlying the propriety of receivership. Currently, the District Court's substantive decision imposing alter ego liability on summary judgment is pending on appeal before this Court in the related case No. 23-6125, as well as its consolidated companion cases. In this appeal, Appellant Avon Capital, LLC again raises the same jurisdictional grounds for vacating the District Court's decision as in the related cases and addresses the substantive issues relating to the District Court's decision to appoint a receiver.

Universitas was the victim of a money laundering conspiracy orchestrated by Daniel Carpenter, wherein Mr. Carpenter and affiliated entities and associates defalcated $30.6 million in life insurance proceeds from Universitas in 2009. A portion of these proceeds were laundered and ultimately used by Avon-Wyoming to purchase SDM-Oklahoma, and by extension, a portfolio of life insurance policies nominally held by SDM-Oklahoma for the beneficial interest of Avon-Wyoming. The intent of the receivership is to preserve this insurance portfolio during the pendency of the related consolidated appeals.

Universitas obtained a judgment against Avon Capital, LLC in the United States District Court for the Southern District of New York ("SDNY Court"). Universitas initiated the underlying post-judgment garnishment action in the District Court in order to garnish the insurance portfolio nominally held by SDM-Oklahoma. On summary judgment, the District Court traced the stolen funds to Avon-Wyoming's acquisition of the life insurance portfolio and pierced Avon-Wyoming's corporate veil to enable Universitas to execute its judgment against the insurance portfolio. Both Avon-Wyoming and SDM-Oklahoma appealed the decision to pierce the veil.

Universitas was concerned that Mr. Carpenter and his affiliates would attempt to conceal or otherwise transfer the insurance portfolio out of the reach of the execution power of the District Court, as he has consistently done since the theft of the proceeds in 2009 in furtherance of his "relentless efforts . . . to prevent Universitas from realizing the benefit of its [litigation] victory."[1] Thus, Universitas moved to appoint a receiver in order to preserve the assets pending appeal.

Consistent with Mr. Carpenter's history of the use of disposable shell companies and fraudulent transfers to conceal stolen funds, there exist three entities named Avon Capital, LLC. The District Court found that Avon-Wyoming's

---

[1] *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014) (unpublished).

ownership interest in SDM-Oklahoma, and thereby its beneficial ownership interest in the policies, was purchased entirely with stolen funds. (J.A. vol. 8 at 1760-1832, *adopted by* J.A. vol. 17 at 4083.)[2] The District Court issued an extensively detailed opinion wherein it traced the stolen funds to Avon-Wyoming's acquisition of the insurance portfolio, pierced Avon-Wyoming's corporate veil, and began subsequent proceedings to allow Universitas to garnish SDM and the insurance portfolio. The Court then appointed a receiver to preserve the assets pending an appeal of its alter ego determination, largely pointing to the history of fraud in the case, Avon-Wyoming's questionable accounting practices, and the lack of other assets held by Avon-Wyoming.

On appeal, this Court found that the case had become moot when Universitas failed to renew its judgment by December of 2020. It vacated the District Court's alter ego order for lack of standing and remanded to the District Court for further proceedings. Universitas subsequently refiled its judgment on August 7, 2023, at which point the District Court held that it had reacquired jurisdiction. On August 15, 2023, the District Court indicated that, subject to the issuance of this Court's mandate in the First Consolidated Appeal, it would re-adopt its prior Order finding

---

[2] Citations to the Joint Appendix filed by the parties on April 15, 2024 shall be denoted by the abbreviation "J.A." and note the volume number and page number of the appendix in which the cited information is found.

Avon-Wyoming to be an alter ego of the other Avon Capital entities. (J.A. vol. 17 at 4111-13.)

This order was also appealed, and Universitas once again moved for the appointment of a receiver over Avon-Wyoming in order to preserve its assets pending appeal, based on the same considerations as its prior motion to appoint a receiver. While Avon-Wyoming made jurisdictional arguments and argued that Oklahoma law precludes a receivership over a limited liability company, it never made the substantive analysis as to whether a receiver could properly be appointed before the District Court. On January 4, 2024, the District Court once again appointed a receiver over Avon-Wyoming. After the receiver's appointment, it became clear that Mr. Carpenter and others working in concert with him were improperly attempting to transfer the insurance portfolio out of SDM-Oklahoma's hands, which necessitated a clarification of the receiver's authority.[3] These continued attempts to fraudulently transfer the insurance portfolio and prevent Universitas from collecting its judgment further underlie the need for a receiver to preserve the assets pending the appeal of the District Court's alter ego determination. Thus, Universitas respectfully requests that this Court affirm the appointment of the receiver and the clarification of the receiver's authority.

---

[3] This Court permitted the Receiver to intervene in the instant case and remanded the Motion to Clarify Authority to the District Cout pursuant to Federal Rule of Appellate procedure 12.1.

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction was based on 28 U.S.C. §§ 1331 and 1332 (2018). This Court has jurisdiction over this consolidated appeal pursuant to 28 U.S.C. § 1292(a)(2), which confers jurisdiction upon this Court to hear interlocutory appeals appointing a receiver and taking steps to accomplish the goals of a receivership.

## STATEMENT OF THE CASE

The underlying proceeding was brought as a post-judgment collection action concerning a judgment against, *inter alia*, Daniel Carpenter and Avon Capital, LLC.

## I.    The Three Avon Capital Entities

At issue in the present appeal are three (3) entities named Avon Capital: (1) Avon Capital LLC, registered in Wyoming ("Avon-Wyoming"), (ii) Avon Capital LLC, a limited liability company registered in Connecticut, ("Avon-Connecticut"), and (iii) Avon Capital LLC, a limited liability company registered in Nevada ("Avon-Nevada"). Avon-Wyoming wholly owns SDM-Oklahoma, which Avon-Wyoming purchased entirely with money stolen from Universitas. The District Court found that SDM in turn nominally holds a portfolio of life insurance policies that it keeps for the benefit of Avon-Wyoming, and ultimately Daniel Carpenter and his affiliates. (J.A. Vol. 8 at 1957, District Court Order dated February 11, 2021, re-entered on September 28, 2023 ("Avon Capital LLC – Wyoming is the nominal owner of SDM").) Ultimately, Mr. Carpenter exercises either direct or indirect control over all the Avon Capital entities (J.A. Vol. 8 at 1773 (noting that Mr. Carpenter was a signatory on Avon Capital bank accounts); J.A. vol. 7 at 1465 ¶ 1 (Mr. Carpenter was chairman of Caroline Financial Group; J.A. vol. 4 at 815 (Caroline Financial was the managing member of Avon-Wyoming).)

## II. The SDNY Court Enters Judgment Against Avon Capital

The SDNY Court entered judgment against Nova Group, Inc., another Carpenter shell company, in an amount exceeding $30 million in Universitas' favor in an arbitration confirmation proceeding. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012) (unpublished). After post-judgment discovery revealed that the stolen proceeds were fraudulently transferred and laundered among numerous shell companies at Mr. Carpenter's direction, the SDNY Court entered judgment against Daniel Carpenter and certain recipients of the stolen insurance proceeds, including Avon Capital, LLC. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014) (unpublished). Specifically, the District Court entered a judgment against Avon Capital for approximately $6.7 million, which constituted the total amount of stolen insurance proceeds that it received. *Id.*

## III. Criminal Prosecution Concerning the Stolen Insurance Proceeds

As a result of the actions Mr. Carpenter took with respect to the issuance of the policies whose benefits were owed to Universitas, as well as the theft of those benefits, the CT Court subsequently convicted Mr. Carpenter on fifty-seven (57) felony counts, including ten counts of money laundering, thirteen counts of illegal monetary transactions, and conspiracy to commit money laundering directly related

to the defalcation of insurance proceeds underlying Universitas' judgment. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020), *cert. denied Carpenter v. United States*, 2020 U.S. LEXIS 5363 (U.S. Nov. 9, 2020) (unpublished). The CT Court found that Mr. Carpenter engaged in criminal activity through his shell companies and found Avon-Wyoming to be among the "most significant" entities within the money laundering conspiracy. *See id.* at 273; *see also id.* at 291 (specifying that the Avon Capital co-conspirator was a Wyoming entity).

## IV. The District Court Garnishment Proceeding

Universitas initiated the underlying proceeding to execute against the insurance portfolio purchased with stolen funds through a garnishment proceeding. (J.A. vol. 1 at 52-59, 62-65.) Avon-Wyoming intervened and moved to enjoin Universitas from executing against the insurance portfolio by alleging that (1) Avon-Wyoming had standing to intervene because it owned SDM, which in turn held legal title to the insurance portfolio, (2) Avon-Wyoming was a separate and distinct entity from the Avon Capital against which the SDNY Court entered judgment and, (3) Avon-Wyoming was not an alter ego of any judgment debtor. (J.A. vol. 1 at 89-103.)

Universitas moved for post-judgment discovery to examine Avon-Wyoming's relationship with the other Avon Capital entities. (J.A. vol. 3 at 759-61.) Following discovery, Universitas then moved for summary judgment to pierce

Avon-Wyoming's corporate veil in order to find them an alter ego of the other Avon Capital entities, including any that were formed in Delaware or Connecticut. (J.A. vol. 5 at 1051-52.) The alter ego determination was necessary in order to properly execute the judgment against the insurance portfolio. Avon-Wyoming not only opposed Universitas's motion for summary judgment on the merits, but also moved to strike the entirety of Universitas' summary judgment evidence for lack of foundation.

Following briefing on summary judgment, the magistrate judge issued a thorough Report and Recommendation ("Magistrate Report and Recommendation") regarding both the law and facts at issue in the summary judgment proceedings. (J.A. vol. 8 at 1760-1832.)[4] After taking judicial notice of prior decisions and proceedings in the SDNY Court, (J.A. vol. 8 at 1767 n.2), the magistrate judge not only traced the funds stolen from Universitas to the purchase of SDM-Oklahoma and its insurance portfolio by Avon-Wyoming, but also found that Mr. Carpenter and his affiliates exercised control over both Avon-Wyoming and SDM-Oklahoma. (*See* J.A. Vol. 4 at 805-10 (deposition testimony of Daniel Carpenter detailing

---

[4] The factual and legal conclusions in the Magistrate Report and Recommendation, which were adopted in the District Court's August 15, 2023 Order, are on appeal in the related consolidated Appeal Nos. 23-6125, 23-6126 23-6167, and 23-6168. Thus, Universitas does not belabor all of the findings or the arguments presented, but rather provides only a concise summary of the findings and procedural posture necessary for disposition of this appeal.

involvement with Avon Capital entities); 811-27 (Avon-Wyoming corporate documents noting Connecticut address; 820-22 (deposition testimony of Donald Trudeau demonstrating confusion regarding Avon Capital entities.) Critically, while Avon-Wyoming was administratively inactive, it closed on the purchase of SDM-Oklahoma in December of 2009, but another of the Avon Capital entities, Avon-Nevada, was the entity that actually made the closing payments. (J.A. vol. 4 at 882-87 (payments from the Avon-Nevada account were sent to the former owners of SDM).) Avon-Nevada, which had its principal offices in Connecticut, had received over $6.7 million of the funds stolen from Universitas in November of 2009. (J.A. vol. 2 at 467 ("According to Avon Wyoming the fraudulent transaction identified by the [SDNY Court] involved a bank account belonging to Avon Nevada . . . .").)

As is relevant to the appointment of a receiver, the magistrate judge found that the SDM-Oklahoma purchase transaction was (1) made with knowledge of pending litigation over the stolen proceeds, and (2) intended to "insulate" the funds from Universitas. (J.A. vol. 8 at 1773-87 (tracing funds), 1805-06 (intended to insulate), 1812-13 (knowledge of pending litigation).) The magistrate judge then applied Wyoming law on alter egos and found conclusively that it was appropriate to pierce the corporate veil and finding Avon-Wyoming to be an alter ego of the other Avon entities. (J.A. vol. 8 at 1823.) Crucially, there existed a commonality of ownership between the Avon Capital entities. (J.A. vol. 5 at 1117-21 (all the Avon Capital

entities are owned 99% by Carpenter Financial Group, Inc. of which Daniel Carpenter is the Chairman, as shown in declaration testimony of Donald Trudeau and tax returns). Moreover, the transfers were made surreptitiously while a threat of litigation was pending, and without any consideration for those transfers. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803 at *5 (S.D.N.Y. Nov. 20, 2013) (unpublished). At the time, as explained *supra*, Avon-Wyoming was also undercapitalized, as it lacked the funds itself to consummate the SDM-Oklahoma transaction into which it entered.

Judge Heaton reviewed these findings *de novo* and "readily" adopted Judge Mitchell's findings in February of 2021. (J.A. vol. 8 at 1956-60.) Judge Heaton pierced Avon-Wyoming's corporate veil and enjoined Avon-Wyoming from transferring assets.

V.   **The First Consolidated Appeal**

Both Avon-Wyoming and SDM-Oklahoma appealed the District Court's February 11, 2021 Order finding that Avon-Wyoming was an alter ego and enjoining Avon-Wyoming from transferring or alienating its assets or ownership interest in SDM. In addition, SDM filed a motion to amend the judgment predicated on an argument that the District Court had lost jurisdiction in December of 2020—after the Magistrate Report and Recommendation had been entered—because Universitas had failed to refile its judgment. (J.A. vol. 8 at 1968-78.) The denial of these motions

was also appealed. During the pendency of that appeal, the District Court also appointed a receiver over Avon-Wyoming and its assets, for reasons that shall be discussed, *infra*. (J.A. vol. 11 at 2604-16.) The appointment of the receiver was also appealed by Avon-Wyoming. Thus, this Court consolidated Appeal Nos. 21-6044, 21-6049, 21-6133, and 21-6134 ("First Consolidated Appeal").

After briefing, oral argument, and a petition for rehearing *en banc*, this Court reversed the District Court's Order, finding that the case had become moot as a result of the failure to renew the judgment after December of 2020, as the last renewal event—issuance of a garnishment summons—had occurred in 2015 and Oklahoma law states that a judgment remains valid for five (5) years. (J.A. vol. 16 at 4038-39 (*Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S. App. LEXIS 20356 (10th Cir. Aug. 4, 2023) (unpublished) ("August 4 Decision")).) This Court did not mandate that the District Court dismiss the case, nor did it address the substantive arguments regarding the propriety of the receivership.

### VI.  Further Proceedings Before the District Court and the Instant Appeal.

The same day that this Court's original decision was entered on July 13, 2023[5] ("July 13 Decision"), the District Court entered an Order setting a status conference for August 15, 2023 in order to address the impact of this Court's July 13 Decision.

---

[5] This decision was amended and superseded by the August 4 Decision after a petition for rehearing *en banc*.

(J.A. vol. 16 at 3919-20-.) The District Court noted that it preliminarily adopted the Report and Recommendation and reaffirmed the existence of the injunction against the alienation, transfer, or concealment of Avon-Wyoming's assets or ownership interest in SDM. (*Id.*) The District Court explicitly stated that this decision was "preliminary so as to leave open for discussion at the pretrial conference the nature and impact of the Tenth Circuit's decision on the [Report and Recommendation] and other actions taken in the case," (J.A. vol. 16 at 3920 n.1), and that its purpose was to "freeze the status of all parties and their related interests in SDM . . . pending the pretrial conference." (*Id.*)

After this Court entered its August 4 Decision, Universitas filed a Notice of Renewal of Judgment on August 7, 2023, and attached the SDNY Court's certified judgment, which remained valid and enforceable in New York, which allows a judgment to be enforced for twenty (20) years. (J.A. vol. 16 at 4043-49); N.Y. CPLR § 211(b) (2024). On August 7, 2023, the District Court reaffirmed its Order dated July 13, 2023, but did not enter a final order adopting the Report and Recommendation. (J.A. vol. 16 at 4050.) On August 14, 2023, Avon-Wyoming and SDM-Oklahoma both filed Motions to Dismiss alleging, *inter alia*, that the proceeding before the District Court was moot; that the District Court lacked personal and subject matter jurisdiction; and that in order to continue its attempts at

execution, Universitas was required to file a new case. (J.A. vol. 17 at 4051-61, 4077-84.)[6]

After the hearing on August 15, 2023, the District Court issued an order denying the motions to dismiss, and setting forth the next steps in the case, including setting a deadline by which to file motions to appoint a receiver. (J.A. vol. 17 at 4083-85.) Universitas did not have an opportunity to substantively respond to the motions to dismiss before they were denied. The District Court noted that it was "mindful of the fact that the mandate has not yet issued from [this Court] and any substantive decision reached now is necessarily contingent on, and effective as of, the issuance of the mandate . . . ." (J.A. vol. 17 at 4111.) Avon-Wyoming was offered an opportunity to object to the "technical sufficiency" of the refiled judgment, which its counsel did not do. (J.A. vol. 19 at 4644:11-4646:16.)

Avon-Wyoming and SDM appealed both the August 7, 2023 Order and the August 15, 2023 Order, which are now the subject of the related consolidated appeals.

---

[6] Universitas did actually file a new case under a new case number in the District Court on August 15, 2023, with a newly certified copy of the judgment rendered by the SDNY Court. (J.A. vol. 19 at 4280:16-22.) This case was administratively dissolved after the August 15, 2023 hearing.

VII.   **Rationale for Receivership**

The District Court first placed Avon-Wyoming in receivership in September of 2021 because it found the existing injunction insufficient to protect the insurance portfolio given Mr. Carpenter and his entities' "sustained pattern of fraudulent transfers to avoid paying the judgment," (J.A. vol. 16 at 2608), such as the purchase of the insurance portfolio on behalf of Avon-WY with fraudulent intent. After this Court vacated the District Court's February 11, 2021 Order, the District Court vacated the original receivership over Avon-Wyoming. (J.A. vol. 18 at 4413-14.)

After the District Court found that it reacquired jurisdiction in its August 15, 2023 Order, Universitas once again moved to place Avon-Wyoming in receivership. The District Court once again granted the motion, now the subject of this appeal, for substantially the same reasons that it appointed the original receiver in September of 2021. (J.A. vol. 18 at 4408-12.)

a.   Carpenter's History of Evading Collection Efforts

The first justification for receivership is Daniel Carpenter's "long track record" of evading creditor collection efforts often in violation of court orders. (J.A. vol. 11 at 2609.); *see e.g.*, *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 3, 2014) (unpublished) (explaining that "Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor . . . despite the Judgment and the service of

restraining notices [prohibiting the alienation of assets]"). Mr. Carpenter has also sabotaged assets to hinder collection efforts. *Id.* at *14-*15 (S.D.N.Y. Jan. 3, 2014).

Moreover, the SDNY Court has found that Mr. Carpenter willfully violates court orders intended to facilitate Universitas' collection efforts and goes so far as to render assets valueless rather than use them to pay Universitas. *See e.g.*, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) (unpublished) (holding Carpenter in contempt for noncompliance with court-ordered discovery); *see also Universitas Educ.*, 2014 U.S. Dist. LEXIS 3983 at *13, *15 (explaining that "the actions of Mr. Carpenter and his affiliates demonstrate an absence of respect for . . . the orders of this Court[]").

This consideration has become particularly salient in the instant appeal. After the District Court appointed the receiver, Mr. Carpenter—using an entity named SDM Holdings, LLC, which he established in Connecticut ("SDM-Connecticut")—has been attempting to fraudulently transfer the insurance policies to entities under his control from the receiver. (J.A. vol. 18 at 4426-4429.) Specifically, Mr. Carpenter and those working with him have threatened Asset Servicing Group ("ASG"), the company that services the policies, and have further contacted the insurers themselves demanding transfers of the policies. (J.A. vol. 19 at 4490.) Mr. Carpenter has taken similar steps in the past, previously threatening legal action

against ASG if it did not transfer SDM-Oklahoma assets to Kathy Kehoe despite the existence of an injunction and receivership over Avon-Wyoming. (J.A. vol. 17 at 4912-14.) Despite numerous representations by Avon-Wyoming that it owns SDM-Oklahoma, it has resisted any attempts by the receiver to prevent the transfer of the policies, despite the fact that such transfer would equate to Avon-Wyoming losing virtually all value in its sole asset. (J.A. vol. 19 at 4562-76 (opposing motion to clarify authority, which was necessary to prevent Mr. Carpenter and his affiliates from transferring policies from SDM-Oklahoma).) Mr. Carpenter's attempts to take control of the policies are ongoing and necessitated the District Court's clarification of the receiver's authority, which is also presently on appeal in this consolidated appeal. (J.A. vol. 18 at 4426-30.)

     b.  <u>Avon-WY's Fraud and Mismanagement</u>

The second key justification for Avon-Wyoming's receivership is that (1) it fraudulently acquired the SDM insurance portfolio with funds stolen from Universitas, and (2) subsequently paid the servicing fees and premium payments for this insurance portfolio with funds stolen from Universitas.[7] (J.A. Vol. 8 p. 1767-81 (tracing funds and discussing "regular" payment of servicing fees and premium

---

[7] The servicing fees and premium payments were often paid by other Carpenter shell companies, many of which also received distributions of funds stolen from Universitas. (J.A. vol. 4 at 898-919 (noting that invoices for SDM were sent to Grist Mill Capital, LLC, a judgment debtor, and paid from the Avon Capital account that received the stolen Universitas insurance proceeds).)

payments from bank account containing stolen funds).) The District Court further found that Avon-Wyoming engaged in fraud unrelated to the SDM insurance portfolio. (J.A. Vol. 8 p. 1782-85 and 1805-10 (discussing Avon-WY's fraudulent conveyance of Ridgewood insurance policies).) The concerns underlying this fraud are even more substantial as prior to the receivership, both Avon-Wyoming and SDM-Oklahoma were controlled by cronies of Mr. Carpenter, who have worked in furtherance of his fraudulent schemes. (J.A. vol. 5 at 1200 (Kehoe managing SDM); J.A. vol. 1 at 121 (Trudeau is a member of Avon-Wyoming who testifies on its behalf); *Carpenter*, 190 F. Supp. 279, 299, n.62 (noting Ms. Kehoe's involvement in a fraudulent scam as a Benistar employee and stating that Trudeau was an unindicted "co-conspirator" in the criminal fraud.) The District Court was also concerned with unexplained irregularities in the Avon-Wyoming's financial statements, such as SDM-Oklahoma counting the value of its purchase price (which is the purchase price of the portfolio it holds) as a debt to Avon-Wyoming. (J.A. vol. 20 at 4783.)

## SUMMARY OF THE ARGUMENT

Avon-Wyoming raises a total of six (6) issues on appeal. As explained, *infra*, the arguments advanced by Avon-Wyoming all fail on legal, factual, or jurisdictional grounds. Thus, Universitas respectfully requests that this Court affirm the District Court's orders entered on August 7, 2023 and August 15, 2023.

I.   **The District Court Correctly held that it Regained Jurisdiction over the Case after Universitas Refiled its Judgment and it did not Err in Readopting the Magistrate Report and Recommendation and Appointing a Receiver (Issues One through Four).**

Avon-Wyoming contends that the District Court erred by holding that it reacquired jurisdiction over the underlying case and readopting the Magistrate Report and Recommendation and then subsequently appointing a receiver over it.

Avon-Wyoming first argues in Issue One that this Court failed to follow the law of the case by not dismissing the case when it was deemed to be moot. This Court never instructed the District Court to dismiss the case after finding it was moot. *Universitas Educ., LLC. v. Avon Capital, LLC et al.*, No. 21-6044(L), 2023 U.S. App. LEXIS 20356, at *14 (10th Cir. Aug. 4, 2023) (unpublished). Instead it remanded to conduct further proceedings. The District Court held that it had reacquired jurisdiction upon Universitas's refiling of the judgment. (J.A. vol. 17 at 4112.) A mandate consists of an appellate court's instructions to the district court and "unless a district court's discretion is specifically cabined, it may exercise discretion on what may be heard." *Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559, 565 (10th Cir. 2020). This Court did not "cabin" the District Court's discretion, and thus the District Court properly exercised its jurisdiction to continue the proceedings after it held it reacquired jurisdiction.

Avon-Wyoming's argument presented in Issue Two also fails as a matter of fact and law. It argues that after the District Court case became moot, the District

Court permanently and irrevocably lost subject matter jurisdiction, which prevented the appointment of a receiver. Other Circuit Courts have held, in various contexts, that if a court temporarily lacks jurisdiction because a plaintiff loses standing, that court may regain jurisdiction if the deficiency in standing is cured. *E.g. Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005). The Supreme Court has also permitted the cure of jurisdictional and standing deficiencies by permitting a case to proceed by joining parties with standing when the original plaintiffs may have lacked standing. *Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952).

Avon-Wyoming's argument in Issue Three is that the District Court was required to dismiss the underlying proceeding for lack of personal jurisdiction when the case became moot. This argument is derivative of and contingent on the argument presented in Issue Two. Because the District Court reacquired jurisdiction over the underlying proceeding and a case or controversy exists, and because Avon-Wyoming intervened in the matter and has litigated the case for nearly a decade, this argument also fails.

Finally, Avon-Wyoming argues in Issue Four that Oklahoma law does not authorize refiling of a foreign judgment in an expired case, and thus Universitas could not cure its standing deficiency. This argument also fails. The underlying case is brought pursuant to Rule 69 of the Federal Rules of Civil Procedure and only

substantial compliance with Oklahoma procedural rules is required. Here, refiling of the judgment in the same case substantially complied with Oklahoma law, and served to renew the judgment and revive the underlying case. *See McCarthy v. Johnson*, No-98-4003, 1999 U.S App. LEXIS 1519 (Feb. 3, 1999) (unpublished)[8] (holding that in light of procedural ambiguity, renewal of a judgment in an original case was proper even if Utah precedent suggested that a new complaint was required). This Court acknowledged in its August 4 Decision that renewing and refiling the judgment within a five-year period after the last renewal event would cure jurisdictional defects under Oklahoma law.

II.     **The District Court did not Abuse its Discretion in Appointing a Receiver over Avon-Wyoming (Issues Five and Six).**

Avon-Wyoming claims that the District Court violated 18 O.S. § 2034 by appointing a receiver over Avon-Wyoming's membership interest in SDM because: (1) 18 O.S. § 2034 dictates that "Universitas' 'sole and exclusive remedy' to enforce the New York Judgment against Avon Capital-Wyoming is limited to a charging order against Avon Capital-Wyoming's membership interest in SDM Holdings," and, (2) receivership is a remedy for executing a judgment against a debtor's

---

[8]Federal Rule of Appellate Procedure 32.1 permits the citation of unpublished decisions issued on or after January 1, 2007. Pursuant to 10th Circuit Rule 32.1(A) these decisions may be "cited for their persuasive value." Moreover, 10th Circuit Rule 32.1(C) permits parties to cite "unpublished decisions issued prior to January 1, 2007 for persuasive value in the same manner and under the same circumstances as are allowed by Federal Rule of Appellate Procedure 32.1(a)(i) . . . ."

membership interest. Avon-WY further argues that the receivership order violated 18 O.S. § 2034 because it interfered with the management of SDM.

The argument fails for numerous reasons. First, the Oklahoma laws governing limited liability companies are explicitly supplemented by Oklahoma law and principles of equity, and Oklahoma precedent includes numerous appointments of receivers over limited liability companies. The argument also fails on substantive grounds as (1) the District Court did not appoint a receiver over Avon-Wyoming's membership interest in SDM, and (2) receivership is not a remedy for executing a judgment. Moreover, 18 O.S. § 2034 limits a creditor's ability to execute against a debtors' membership interest in an LLC, which Universitas did not seek to do. Universitas sought to execute its judgment against Avon-WY assets that are nominally owned by SDM for Avon-Wyoming's benefit. Avon-Wyoming provides no legal authority to suggest that Universitas cannot recover Avon-Wyoming assets within SDM-Oklahoma's possession.

Avon-Wyoming's argument that the District Court abused its discretion when it placed Avon-Wyoming in receivership pursuant to 12 O.S. § 1551 also fails on the merits. Most fatal to Avon-Wyoming's argument is that it forfeited any substantive challenges to the District Court's decision by failing to make them before the District Court. Even if the argument is not forfeited, the District Court had numerous justifications to place Avon-Wyoming into receivership pursuant to 12 O.S. § 1551,

particularly the need to preserve assets on appeal—the need for which became even more apparent after the attempts of Daniel Carpenter and SDM Connecticut to divert the insurance policies and benefits after District Court imposed a receiver.

Avon-Wyoming claims that receivership was improper because Universitas cannot satisfy the relevant considerations. The District Court found in its first receivership order, and reaffirmed that finding in the current order on appeal, that the following factors weighed in favor of receivership: (i) the financial position of the debtor, (ii) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered, (iii) the probability that Avon-WY engaged in fraud or will engage in fraud, (iv) the inadequacy of available legal remedies, and (v) the lack of a less drastic equitable remedy. (J.A. vol. 11 at 2607-2610.)

## ARGUMENT

### I. The District Court Correctly Found that it Possessed Jurisdiction to Enter an Order Appointing a Receiver.[9]

Avon-Wyoming filed a motion to dismiss in the District Court on August 14, 2023, alleging that the proceedings in the District Court were moot as a result of this Court's August 4 Decision, and that this necessitated immediate dismissal for lack of subject matter jurisdiction and personal jurisdiction, which could not be cured by

---

[9] Universitas notes that the analysis for Issues One through Four is nearly identical to that presented in the Consolidated Appeal Nos. 23-6125, 23-6126, 23-6167, and 23-6168. Those cases have not been consolidated with the present appeal, and thus Universitas restates its arguments in this brief in an abundance of caution.

refiling of the judgment. Avon-Wyoming then restated these arguments in its Opposition to the Motion for Appointment of a Receiver. (J.A. vol.18 at 4370-79.)[10]

### a. The District Court did Not Improperly Fail to Follow the Mandate

#### i. Standard of Review

Generally, an appellate court reviews interpretation of the scope of the mandate *de novo*. *Dish Network Corp. v. Arrowood Indem., Co.*, 772 F.3d 856, 864 (10th Cir. 2014).

#### ii. Legal Standard

The mandate rule is an "important corollary to the law of the case doctrine" and provides that district court "must comply strictly with the mandate rendered by the reviewing court." *Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559, 565 (10th Cir. 2020) (quoting *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128,

---

[10] Universitas notes that it did not substantively address these arguments in the District Court because it initially lacked an opportunity to respond before they were denied. Avon-Wyoming then restated these arguments in its Opposition to the Motion to Appoint a Receiver, despite having already been rejected. Thus, Universitas makes the counterarguments to Issues One through Four for the first time on appeal. This Court will not normally consider argument made for the first time on appeal. *Wei v. Univ. of Wyo. College of Health Sch. Pharm.*, 759 F. App'x 735, 740 n.2 (10th Cir. 2019) (internal citations omitted). Here, however, the arguments had already been rejected by the time they were made in opposition to the receivership and it was unnecessary for Universitas to respond. Thus, the general rule that new arguments cannot be made on appeal should properly be relaxed. *E.g. Blue Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016). Finally, this Court may also "affirm on any basis supported by the record," and the record below indicates that affirmance is proper for the reasons set forth herein. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1188 (10th Cir. 2020) (internal citations omitted).

1132 (10th Cir. 2001). Thus, an appellate court decision on a particular issue governs that issue at all later states of litigation in the district court. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1099 (10th Cir. 2017). To determine whether a district court strays from a mandate, the mandate must be compared to the decision rendered by the district court. *United States v. Walker*, 918 F.3d 1134, 1144 (10th Cir. 2019).

A "mandate consists of [an appellate court's] instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003). In interpreting the scope of a mandate, an appellate court looks for specific limitations of the district court's discretion and whether the district court's discretion is "specifically cabined." *Solidfx*, 823 F. App'x at 565 (quoting *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011)).

### iii. The District Court Correctly Continued Proceedings after the Case was Remanded to the District Court.

Avon-Wyoming states correctly that this Court held that the underlying dispute was moot at the time that the District Court entered its February 11, 2021 Order and vacated that order as void. (Avon-Wyoming's Opening Br. at 15 (citing J.A. vol. 16 at 4031.) Avon-Wyoming also correctly argues that this Court held that such moot cases are no longer cases or controversies for purposes of Article III standing.

Critically, however, the mandate includes more than merely an appellate court's opinion; it also includes instructions to the District Court on how to proceed with the case on remand. *Haugen*, 317 F.3d at 1126. In its decision, this Court remanded the case to the District Court "to conduct further proceedings," but it did not instruct the District Court to dismiss the case. August 4 Decision, 2023 U.S. App. LEXIS 20356 at *14. The District Court noted the lack of language mandating dismissal at the hearing held on August 15, 2023. (J.A. vol. 19 at 4291:21-24 ("There weren't any instructions to dismiss here. They remanded it for further proceedings, which would seem to contemplate something other than just . . . [c]ollapsing the tent . . . .").) Thus, the District Court conducted proceedings in a manner consistent with the directions issued by this Court. The District Court accepted this Court's decision that its prior February 11, 2021 order was vacated as void, which was consistent with this Court's opinion and mandate. While it may be customary for a case to be remanded with directions to dismiss when it is found to be moot, *Hirschfield v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325, 328 (4th Cir. 2021), this Court did not issue that customary instruction.

Importantly, while it is no longer the operative decision in the case after it was amended after a petition for rehearing *en banc*, this Court's July 13 Decision remains instructive. In that decision, this Court suggested that the proper refiling of a judgment would once again vest the District Court with jurisdiction and revive the

case or controversy. July 13 Decision, 2023 U.S. App. LEXIS 17968 at *14. Thus, the District Court's decision that it reacquired jurisdiction when Universitas refiled its judgment finds support in the record. Avon-Wyoming had argued that Universitas needed to refile the judgment itself in order to restore a case or controversy in a separate proceeding, as a simple notice of renewal or refiling was insufficient. Universitas did just that and counsel for Avon-Wyoming did not suggest that the filing was technically insufficient. (J.A. vol. 19 at 4278:13-4279:16.)

As such, on *de novo* review, this Court should find that the District Court did not fail to follow the law of the case or the mandate and uphold the District Court's decision.

      b.  <u>The District Court did Not Improperly Readopt its February 11, 2021 Order Because it Reacquired Subject Matter Jurisdiction and Personal Jurisdiction after Universitas Refiled its Judgment and the Claims were no Longer Moot.</u>

      i.  *Standard of Review*

Mootness is a question of law that is reviewed *de novo*. *Rio Grande v. Oliver*, 57 F4th 1147, 1159 (10th Cir. 2023). An appellate court reviews de novo the issue of subject-matter jurisdiction. *Kahn v. Bank of N.Y. Mellon*, 525 F. App'x 778, 779 (10th Cir. 2023). An appellate court also reviews *de novo* whether a district court properly exercises personal jurisdiction over a party. *Emplrs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1156 (10th Cir. 2010).

*ii.  Legal Standard*

Article III of the Constitution only permits federal courts to decide cases or controversies, which requires a "genuine, live dispute between adverse parties . . . ." *Winter v. N.M. Dep't of Workforce Sols.*, No. 23-2014, 2023 U.S. App. LEXIS 34144, at *8 (10th Cir. Dec. 26, 2023) (unpublished) (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). If a case is moot, a court lacks subject matter jurisdiction over that case. *Audubon of Kansas, Inc. v. United States' Dep't of Interior*, 67 F.4th 1093, 1101 (10th Cir. 2023). Generally, if an intervening circumstance deprives a plaintiff of standing or a court of subject matter jurisdiction, a case should be dismissed as moot. *Winter*, 2023 U.S. App. LEXIS 34144 at *8 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)); *Jones v. Dalrymple*, 679 F. App'x 668, 670 (10th Cir. 2017) (explicitly instructing district court to dismiss after remanding case where there was no evidence to support a finding of subject matter jurisdiction); *see also Hirschfield*, 14 F.4th at 325 ("Once a case is rendered moot on appeal, we *customarily* vacate the opinions and remand with direction to dismiss.") (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950)) (emphasis added). As long as the parties "have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Notwithstanding the general rule that moot cases must be dismissed, this rule is not absolute. For instance, as the *Hirschfield* court noted, a finding of mootness does not necessarily require vacatur of lower court opinions, which may be preserved under equitable principles. *Hirschfield*, 14 F.4th at 327. Even the Supreme Court has permitted cases to proceed through the curing of a standing or other jurisdictional deficiency. *See Caterpillar Inc. v Lewis*, 519 U.S. 61, 73 (1996) (holding that where a court loses diversity jurisdiction after removal, dismissal of the non-diverse party after removal and before the judgment cures the defect): *Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952) (permitting joinder of parties with standing on appeal when the original plaintiffs lacked standing in order to cure potential Article III deficiencies). The Supreme Court even noted in *Mullaney* that to "dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration . . . ." 342 U.S. at 416-17.[11]

Other Circuit Courts have also found that if a court temporarily lacks jurisdiction because a plaintiff lacks standing, a court may regain jurisdiction.

---

[11] While *Mullaney* is not directly analogous to the case at bar, and the Supreme Court noted it was fact circumstance specific, it stands for the proposition that standing deficiencies may be cured in litigation and a case may continue once such deficiencies are cured. Avon-Wyoming's position in this case is wholly inconsistent with *Mullaney*, particularly Avon-Wyoming's desire to waste resources in needlessly restarting the case.

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (noting in the patent context that a plaintiff had constitutional standing at the commencement of a case, lost it, and then reacquired it before judgment, which permitted the court to rule on the judgment); *Affinion Loyalty Grp., Inc. v. Maritz, Inc.*, No. 04-360-JJF, 2006 U.S. Dist. LEXIS 32311, at *4 (D. Del. May 22, 2006) (unpublished) ("A court, which temporarily lacks jurisdiction due to a plaintiff's lack of standing, may regain jurisdiction if the original plaintiff had Article III standing and there is a way to cure the deficiency.") (citing *Schreiber Foods*); *see also Corbin v. Blankenburg*, 39 F.3d 650, 654 (6th Cir. 1994) (finding that loss of standing could be cured by joinder of party with standing).

Dismissals on jurisdictional grounds, such as mootness, are necessarily without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006). Courts can revive cases that were dismissed without prejudice. *See Semtek Int'l, Inc. v. Lockheed Martin Corp*, 531 U.S. 497, 505 (2001) (noting that "without prejudice" denotes that a plaintiff may "refile the same suit on the same claim); *Ali v. City of Chicago*, 34 F.4th 594, 598 (7th Cir. 2022) (noting that there may be a conditional ability to revive a case dismissed without prejudice).

> ### iii. The District Court Properly Found that it Reacquired Subject Matter Jurisdiction over the Case.

Avon-Wyoming argues that the District Court erred by not dismissing the underlying case as moot after the mandate was issued. While that may be the typical

relief after a finding of mootness, such dismissal is inappropriate and unwarranted under the facts of this case.

Critical to this analysis is the nature of the garnishment proceeding before the District Court. As this Court noted in its August 4 Decision, the statute of limitations on the judgment in the underlying proceeding is governed by Oklahoma law, by virtue of the applicability of Rule 69 of the Federal Rules of Civil Procedure to the proceeding before the District Court. August 4 Decision, 2023 U.S. App. LEXIS 20356 at *7. Oklahoma has a statute of limitations of five (5) years for the enforceability of judgments. When Universitas registered its New York judgment in the District Court pursuant to 28 U.S.C. § 1963 (2018), it created a new judgment "with the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." § 1963. Thus, despite the fact that a New York judgment remains valid and enforceable for twenty (20) years, N.Y. CPLR § 211(b), the Oklahoma judgment was only valid for five (5) years, Okla. Stat. § 12-735(B).

However, under Oklahoma law, a judgment can be renewed if, *inter alia*, a garnishment summons is issued or a notice of renewal is filed with the court. Okla. Stat. § 12-735(B)(2)-(3). The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey* that when a judgment creditor seeks to enforce an out-of-state judgment a second time in Oklahoma, where the Oklahoma limitations period has lapsed but the

originating state judgment has not, the underlying judgment may be enforced in Oklahoma as long as the underlying judgment remains valid. 2018 OK 32, 419 P.3d 217, 218 (Okla. 2018). In *Taracorp*, nine years lapsed between the first attempt to enforce a Colorado judgment in Oklahoma and the second attempt to enforce that judgment. *Id.* at 219. The *Taracorp* court held that enforcement was appropriate even if the Oklahoma limitations period had already run. *Id.* at 223.

Universitas noticed a renewal of its judgment on August 7, 2023. (J.A. vol. 16 at 4015-21.) It filed a notice and attached a certified copy of the 2014 SDNY Court judgment, which remained properly enforceable pursuant to New York law. This refiling of the judgment renewed the judgment for five (5) more years, once again making it enforceable in Oklahoma. In turn, the existence of a valid judgment cured Universitas's lack of standing and permitted the District Court to reacquire jurisdiction. *See Mullaney*, 342 U.S. at 416-417 (finding lack of standing cured by joining parties after the start of a case); *Schreiber Foods*, 402 F.3d at 1203 (finding that standing was reacquired when an original plaintiff reacquired the patent at issue in the litigation).

Moreover, Rule 69 proceedings to enforce judgments are meant to be "swift, cheap, [and] informal." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (noting that applying every "jot and tittle" of state procedural law is improper in supplementary proceedings). The draftsmen of Rule 69 did not "mean

to put the judge into a procedural straitjacket, whether of state or federal origin." *Id.* (noting that a judge may proceed forward in any manner that satisfies the requirements of due process, including, if proper, summary judgment). Here, the refiling and notice of renewal of the judgment in a manner that substantially complied with the Oklahoma statute served to revive the case and controversy in the underlying proceeding. Indeed, this Court appears to have acknowledged that a proper refiling of the Oklahoma judgment could once again vest the District Court with jurisdiction. July 13 Decision, 2023 U.S. App. LEXIS 17968 at *14 ("Universitas has since re-filed the judgment, vesting the Western District of Oklahoma with jurisdiction once again[]").

Additionally, any dismissal of the underlying case for mootness or lack of subject matter jurisdiction would have necessarily been without prejudice. *Brereton*, 434 F.3d at 1216-17. Thus, Universitas would have been entitled to revive the proceeding if it could cure the defects that led to the dismissal in the first instance. As such, under a *de novo* review, this Court should find that the District Court properly held it reacquired jurisdiction over the underlying proceeding after Universitas properly noticed and refiled its judgment.

     c.  <u>The District Court Reacquired Personal Jurisdiction.</u>

Avon-Wyoming's argument that the District Court lost personal jurisdiction over them is predicated entirely on the fact that the case became moot, thus resulting

in a lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Avon-Wyoming's Opening Br. at 25-26.) Avon-Wyoming points out that after losing jurisdiction, the orders and actions of the District Court were rendered moot. However, the District Court established personal jurisdiction over Avon-Wyoming before the case became moot. Avon-Wyoming cites to *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), for the proposition that when a case or controversy becomes moot, the District Court loses personal jurisdiction over the parties. (Avon-Wyoming Opening Br. at 26.) However, *Already* contains no discussion of personal jurisdiction or the loss thereof. *Id.* Unlike subject matter jurisdiction, personal jurisdiction represents an individual right that can be waived. *Ins. Corp. of Ir. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Avon-Wyoming intervened in the underlying case and has engaged in protracted litigation in the case to defend its alleged rights and the rights of other third parties. *See Bayshore Ford Truck Sales. Inc. v. Ford Motor Co.*, 471 F.3d 1233, 1248-49 (11th Cir. 2006) (holding that an intervenor willingly submits itself to personal jurisdiction through the act of intervention). Its claims of lack of personal jurisdiction have long since been waived by their participation in the summary judgment and other proceedings. Thus, because Avon-Wyoming's argument is contingent on the underlying case being dismissed as moot, and because such dismissal is not required under the facts of the case, this Court should hold that the

District Court properly exercised personal jurisdiction over Avon-Wyoming after Universitas refiled its judgment.

d. <u>The District Court did Not Improperly Find that Refiling of the Judgment in the Underlying Case Revived the Judgment</u>

i. *Standard of Review*

Appellate courts review questions of statutory interpretation *de novo*. *Vote Solar v. City of Farmington*, 2 F.4th 1285 (10th Cir. 2021).

ii. *Legal Standard*

Rule 69 of the Federal Rules of Civil Procedure notes that a money judgment is "enforced by a writ of execution" and that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). as explained, *supra*, proceedings to enforce judgments are meant to be "swift, cheap, [and] informal" and Rule 69 is not intended to put judges into a "procedural straitjacket." *Ruggiero*, 994 F.2d at 1226. Thus, Courts have routinely held that "substantial compliance" with the procedural provisions of any controlling state statutes or case law is sufficient." *McCarthy v. Johnson*, No. 98-4003, 1999 U.S App. LEXIS 1519, at *5 (10th Cir. Feb. 3, 1999) (unpublished) (citing 12 Charles A. Wright et a., <u>Federal Practice and Procedure</u> § 3012, at 154 (1997)); *Hansjurgens v. Bailey*, 90 F.4th 1158, 1168 (11th Cir. 2024) (finding that Rule 69 does not require "revival proceedings in federal

court to strictly follow state-law procedures, however impractical or arcane" and that such proceedings need only "substantially comply" with state law procedures).

Moreover, as explained, *supra*, the Oklahoma Supreme Court held in *Taracorp* that a valid out-of-state judgment may be enforced in Oklahoma even after it has already been registered and lapsed, as long as the out-of-state judgment remains valid and enforceable. 419 P.3d at 223. Generally, a judgment may be renewed by, *inter alia*, issuing a garnishment summons or filing a notice of renewal with the court. 12 Okla. Stat. § 735(a). The Oklahoma Supreme Court found that simply refiling the valid out-of-state judgment created a new, valid, and enforceable judgment. 419 P.3d at 219, 223 (finding that the out of state judgment that was re-filed could be enforced).

### iii. The District Court Properly Found that it Reacquired Subject Matter Jurisdiction over the Case.

Avon-Wyoming contends that "Oklahoma law does not recognize re-filing of a judgment in a moot case . . . ." (Avon-Wyoming Opening Br. p. 30.) In support of this proposition, Avon-Wyoming hangs its hat on dicta found in a 2006 Oklahoma Court of Appeals case captioned *Yorkshire West Capital, Inc. v. Rodman*, 149 P.3d 1088 (Okla. Civ. App. 2006). In *Rodman*, the court held that a foreign judgment remained valid and enforceable and could thus be refiled in Oklahoma and once again create an enforceable Oklahoma judgment. *Id.* at 1093. The *Rodman* court noted that "Yorkshire properly filed it a second time in Oklahoma under a new case

number." *Id.* Thus, Avon-Wyoming contends that Universitas must start all over and refile the judgment in a completely new case if it wants to continue execution proceedings. Avon-Wyoming's contention is inconsistent with applicable law and wholly unpersuasive.

As an initial matter, *Taracorp* controls, not *Rodman*. *Taracorp* makes no mention of a requirement to refile under a new case number, and no such requirement should be read into *Taracorp*. More importantly, Avon-Wyoming fails to analyze the re-filing of Universitas's judgment in the context of Rule 69. As this Court and numerous others have held, strict compliance with state law is not required in a Rule 69 proceeding; instead, substantial compliance suffices. *E.g. McCarthy*, 1999 U.S. App. LEXIS 1519 at *5. While *McCarthy* is not binding precedent on this Court, it is instructive. In *McCarthy*, this Court considered whether a party could renew a judgment in the same case in which that judgment was initially entered. The Court found that there existed ambiguity as to whether renewal in the original case was acceptable under Utah law, but found that, in the context of a swift and informal Rule 69 action, substantial compliance with the Utah rules sufficed for a renewal. *Id.* Thus, the Court found that renewal of a judgment was proper in the same case, and it was unnecessary to file a new complaint and summons to renew the judgment. *Id.* This Court later noted that revival under Rule 69 in this manner was a "well-reasoned" position. *Sec. Investor Prot. Corp. v. Institutional Secs. of Colo.*, 37 F.

App'x 423, 425 (10th Cir. 2002)*; see also Hansjurgens*, 90 F.4th at 1170, (finding that under Rule 69, even if service is not proper, as long as there was substantial compliance, there is no procedural issue).

Thus, Universitas substantially complied with the process to renew a judgment under Oklahoma law. *Taracorp* recognizes that a valid and enforceable out-of-state judgment may be refiled as an Oklahoma judgment even if it had previously been filed and lapsed and 12 Okla. Stat. § 735(a) does not prevent such filing. This Court's persuasive caselaw recognizes that even if there exists some ambiguity regarding the exact proceeding in which a filing must be made, Rule 69 allows substantial compliance by making that filing in the original case. Moreover, allowing Universitas to refile in the underlying case comports with Supreme Court precedent for curing standing deficiencies and the Supreme Court's recognition that to "dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration . . . ." *Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952).

In fact, Universitas did file a separate case in the District Court with the intent to procedurally consolidate it with the underlying case. However, the District Court noted that a new case number was unnecessary, particularly in light of the protracted nature of the underlying case and all the judicial work that had already been completed. (J.A. vol. 19 at 4647:16-22, 4670:16-4672:18.) This decision is

consistent with the result in *Mullaney*. Thus, upon *de novo* review, this Court should hold that the District Court did not err in finding that the refiling of Universitas's New York judgment and notice thereof was sufficient to cure any standing defects under the flexible procedures of Rule 69.

## II. The District Court's Appointment of a Receiver is not Precluded by 18 O.S. § 2034.

Avon-Wyoming first argues that the District Court erred by appointing a receiver because it contends that under Oklahoma law, the sole and exclusive remedy when dealing with limited liability companies is a charging order. This argument fails for numerous reasons.

### a. Standard of Review

This Court reviews a district court's order appointing a receiver for an abuse of discretion. *SEC v. Scoville*, 913 F.3d 1204, 1213 (10th Cir. 2019); *see also Truett v. Freedom Leaf*, 2021 OK CIV APP 26, 495 P.3d 153, 159 (Okla. Civ. App. 2021). "A district court abuses its discretion when it commits an error of law or relies upon a clearly erroneous factual finding." *Scoville*, 913 F.3d at 1213.

### b. 18 O.S. § 2034 Did not Prevent Recovery of the Insurance Portfolio or Preclude Receivership.

18 O.S. § 2034 prevents creditors from executing their judgment against a debtor's membership interest in a domestic LLC. *See* 18 O.S. § 2034. Universitas does not attempt to execute its judgment against any such membership interest.

Rather, Universitas seeks to execute its judgment against Avon-Wyoming assets in SDM's possession. Accordingly, § 2034 is not a bar to the imposition of a receiver. This is consistent with the District Court's holdings in its original September 22, 2021 Order appointing a receiver. (J.A. vol. 11 at 2606-07.)

Moreover, the courts have interpreted 18 O.S. § 2034 such that the statute does not support Avon-Wyoming' argument that Universitas cannot recover assets purchased with stolen funds because the assets are in the possession of a domestic LLC in which the debtor also has a membership interest. *See Scottsdale Ins. Co. v. Tolliver*, No. 04-cv-0227-CVE-FHM, 2012 U.S. Dist. LEXIS 19686, at *9-*10 (N.D. Okla. Jan. 11, 2012) (finding that 18 O.S. § 2034 is inapplicable when debtors use domestic LLC to defraud creditors and "remove[] property from the 'jaws of execution'") (internal citations omitted), *adopted by* 2012 U.S. Dist. LEXIS 62525 (N.D. Okla., May 4, 2012) (unpublished); *see also Mattingly Law Firm, P.C. v. Henson*, 2020 OK CIV APP 19 ¶ 17, 466 P.3d 590, 595 (Okla. Civ. App. 2020) ("The Oklahoma LLC Act provides that the 'rules of law and equity' shall supplement the Act with regard to any case not addressed therein.").

Assuming *arguendo* that 18 O.S. § 2034 was in some manner applicable, the receivership order did not violate the statute because limiting the remedies whereby creditors can execute a judgment against LLC ownership interests does not immunize LLCs in which debtors have a membership interest from receivership. *See*

*SEC v. Wing*, 599 F.3d 1189 (10th Cir. 2010) (affirming appointment of receiver to manage multiple LLCs in which debtors had membership interest). In fact, even a cursory search of Oklahoma precedent reveals numerous cases in which Oklahoma courts have allowed the appointment of a receiver over Oklahoma limited liability companies. *See First Nat'l Bank of Vinita v. Energy*, No. CJ-202001487, 2020 Okla. Dist. 4644, at *2 (Dist. Ct. Okla. July 10, 2020) (unpublished) (noting that the trial court appointed a receiver over defendants, including two different limited liability companies); *Liberty Fed. Sav. Bank v. Jake Dev., L.L.C.*, No. CJ-2010-5687, 2010 Okla. Dist. LEXIS. 768, at *1 (Dist. Ct. Okla. July 22, 2010) (unpublished) (appointing receiver over domestic limited liability company by agreement of parties).

Even if the clear precedent of Oklahoma courts appointing receivers over limited liability companies does not put the nail in the coffin of Avon-Wyoming's argument, the overly rigid interpretation advanced by Avon-Wyoming fails for numerous other reasons. First, as *Henson* makes explicit, the Oklahoma LLC Act explicitly provides that rules of law and equity remain applicable to limited liability companies. In *Henson*, the Oklahoma Court of Civil Appeals held that it was appropriate to pierce the veil and impose alter ego liability against limited liability companies that were being used to shield assets from prospective creditors. 466 P.3d at 597. If Avon-Wyoming's interpretation of 18 O.S. § 2034 is correct, such relief

would have been unavailable as a remedy for the Court of Civil Appeals. Any such interpretation also fails, *inter alia*, because receivership is not traditionally considered a "remedy." *See Okla. Co. v. O'Neil*, 1968 OK 63 ¶¶ 38-40, 440 P.2d 978, 987 (Okla. 1968) (providing that receivership is "a provisional remedy granted only in connection with an action for some other purpose" and thus does not constitute an election of remedies).

### c. 18 O.S. § 2034 Did Not Limit the Scope of Receivership.

Avon-WY did not argue in District Court that permitting the receiver to exercise Avon-WY's right to replace SDM's manager would violate 18 O.S. § 2034 and thus Avon-WY waived this argument. Assuming *arguendo* that the Court considers this argument, it fails because the receiver's ability to replace SDM's manager was a result of SDM's operating agreement. As explained *infra*, participating in management pursuant to the operating agreement is permissible.

### d. Avon-Wyoming's Caselaw Did Not Demonstrate that the District Court Abused its Discretion.

Avon-Wyoming relies upon *Southlake Equip. Co. v. Henson Gravel & Sand, LLC* to support their argument that the District Court abused its discretion by allowing the appointment of a receiver. That reliance is misplaced. *Henson Gravel* involved the assignment of a debtor's economic membership interests (and voting membership interests) in an Oklahoma LLC to a creditor. *See Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 2013 OK CIV APP 87, 313 P.3d 289 (Okla. App.

2013). This is precisely what 18 O.S. § 2034 prohibits, and thus the court found that the assignment of the debtor's membership interests violated 18 O.S. § 2034. *See id.* The court also explained that non-economic membership interests must be conveyed in accordance with the LLC's operating agreement and thus found the assignment of voting interests (and the consequent participation in management) improper because it violated the LLC operating agreement. *See id.* (citing 18 O.S. § 2033).

Neither precedent is relevant because the District Court did not assign Avon-WY's membership interests in SDM to Universitas. Moreover, the receiver's participation in SDM's management was a function of SDM's operating agreement—the *Henson Gravel* court explicitly found this permissible. *Henson Gravel* is further distinguishable from this case because (1) *Henson Gravel* did not involve debtors acting with fraudulent intent, (2) *Henson Gravel* did not involve debtors abusing the corporate form to shield assets from creditors, and (3) the LLC at issue in *Henson Gravel* had innocent members with ownership interests. *See id.*

III.   **The District Court Did Not Abuse Its Discretion by Placing Avon-WY in Receivership Pursuant to 12 O.S. § 1551.**

a.   Standard of Review

Absent extraordinary circumstances, arguments raised for the first time on appeal are waived. *Little v. Budd Co.*, 955 F.3d 816, 821 (10th Cir. 2020). "To urge reversal of an issue that was forfeited in district court, an appellant must argue plain error." *In re Rumsey Land Co.*, 944 F.3d 1259, 1271 (10th Cir. 2019). This Court

reviews a district court's order appointing a receiver for an abuse of discretion. *SEC v. Scoville*, 913 F.3d 1204, 1213 (10th Cir. 2019).

      b.  <u>Avon-Wyoming Forfeited and/or Waived All Arguments Concerning its Placement in Receivership.</u>

An analysis of Avon-Wyoming's brief in opposition to Universitas Motion to Reappoint Receiver makes clear that Avon-Wyoming never undertook the analysis under 12 O.S. § 1551 before the District Court. Instead, it remade its jurisdictional and mootness arguments and argued that Oklahoma law only authorizes a charging order as a remedy. (J.A. vol. 18 at 4362-83.) Thus, the argument was forfeited before the District Court and waived on appeal, as it is the first time Avon-Wyoming makes the argument as it applies to this receivership. Avon-Wyoming points to no extraordinary circumstances and conducts no analysis under plain error review in its Opening Brief. As such, its arguments in Issue Six are waived on appeal. *See Rumsey*, 944 F.3d at 1271-1272.

      c.  <u>Receivership Was Proper Pursuant to 12 O.S. § 1551.</u>

Assuming this Court finds that Avon-Wyoming did not waive these arguments, Universitas addresses them on the merits. As Avon-Wyoming correctly states, pursuant to Rule 69 of the Federal Rules of Civil Procedure, Oklahoma law governs the appointment of receivers in the underlying case. The District Court placed Avon-WY in receivership on January 4, 2024 pursuant to 12 O.S. §1551, noting that "the circumstances which previously justified the appointment of a

receiver continue to be present at this time." *Universitas Education, LLC v. Avon Capital, LLC et al.*, No-5:14-fj-00005, 2024 U.S Dist. LEXIS 7240, at *11-*12 (W.D. Okla. Jan. 4, 2024). Thus, the District Court's order dated September 22, 2021, which provides the rationale for the first receivership, is instructive in this analysis.

A district court may complement an existing injunction by appointing a receiver to manage an entity. *See Hellebust v. Brownback*, 824 F. Supp. 1524, 1529 (D. Kan. 1993) (explaining that equitable remedies "such as receivership" may be used "in aid of an outstanding injunction") (internal citations omitted); *SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019) (confirming receivership and injunction).

Avon-Wyoming claims that the District Court abused its discretion by placing Avon-WY in receivership pursuant to 12 O.S. § 1551. The bulk of Avon-Wyoming's analysis relates to 12 O.S. § 1551(1), which specifically permits a court to appoint a receiver where there is a chance that the property at issue is in danger of "being lost, removed, or materially injured." As an initial matter, this analysis is largely irrelevant as Universitas moved for receivership pursuant to 12 O.S. § 1551(3)-(6). (J.A vol. 17 at 4176-78.) Thus, Avon-Wyoming cannot establish that the District Court abused its discretion by placing Avon-WY in receivership pursuant to 12 O.S. § 1551(1), which was never a form of relief requested by Universitas. *See Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 772 (10th Cir. 2019) (per

curiam) (explaining that appellate court "cannot evaluate, let alone reverse, the reasoning of the district court" when appellant "does not explain precisely how the court abused its discretion").

Avon-Wyoming's only argument concerning 12 O.S. § 1551(3)-(4) claims that receivership was improper because Avon-WY appealed the District Court's alter ego finding and thus there exists no enforceable judgment against Avon-Wyoming. (Avon-Wyoming Opening. Br. at 42-43.) These provisions permit the appointment of a receiver to aid in the enforcement of a judgment. 12 O.S. § 1551(3) (providing for receivership "[a]fter judgment, to carry the judgment into effect"); 12 O.S. § 1551(4) (providing for receivership "[a]fter judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or … when the judgment debtor refuses to apply his property in satisfaction of the judgment"). Avon-Wyoming provides no legal authority to support its meritless position that no judgment exists, and thus this "argument" is inadequate. *See* Fed. R. App. P. 28(a)(8)(A); *see also Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976, 977-78 (10th Cir. 1994) (characterizing argument without citation to a single legal authority as "not adequate appellate argument"). To the extent that Avon-Wyoming claims that the judgment is unenforceable until it is affirmed on appeal, its position is wrong as a matter of law. *See Acevedo-Garcia v. Vera-Monroig*, 368 F.3d 49, 58 (1st Cir. 2004) ("The federal rules contemplate that, absent a stay, a

victorious plaintiff may execute on the judgment even while an appeal of that judgment is pending.") (citing Fed. R. Civ. P. 62). Thus, there does in fact exist a judgment, and the District Court has found that the judgment may be enforced against Avon-Wyoming by virtue of its status as an alter ego of other Avon Capital entities.

The District Court could also properly have appointed a receiver to manage Avon pursuant to 12 O.S. § 1551(6) because of Avon's (1) fraudulent conduct and (2) the prior mismanagement of its property. *See* 12 O.S. § 1551(6) (providing for receivership "[i]n all other cases where receivers have heretofore been appointed by the usages of the courts of equity"). Oklahoma courts have long recognized their authority to appoint a receiver over a company—even a foreign company—where the property of that "corporation is being mismanaged or is in danger of being lost to the stockholders through mismanagement, collusion, or fraud of/its officers and directors . . . ." *Anglo-American Royalties Corp. v. Brentall*, 1934 OK 53, 29 P.2d 120, 121 (Okla. 1934) (holding that a trial court did not abuse its discretion in appointing a receiver over a Delaware corporation conducting business in Oklahoma where there existed credible allegations of fraud and insolvency).

Universitas pointed to several cases supporting its position that appointment of a receiver is appropriate when there exist credible allegations of fraud or mismanagement. *See Okla. Co. v. O'Neil*, 1968 OK 63 ¶ 41, 440 P.2d 978, 987

(1968) (explaining that "it would have been most unusual for the trial court to have refused to appoint a receiver" pursuant to 12 O.S. § 1551 when there was evidence of mismanagement and fraud); *see also Wells Fargo Bank, N.A. v. Mesh Suture*, No. 19-CV-03218-PAB-GPG, 2020 U.S. Dist. LEXIS 184773, at *6 (D. Colo. Feb. 10, 2020) (unpublished) (noting that "a prima facie showing of fraud and mismanagement is enough to call into play the equitable powers of the court" to appoint a receiver) (internal citations omitted); *also EarthGrains Baking Cos. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2018 U.S. Dist. LEXIS 188349, at *18 (D. Utah Nov. 2, 2018) (unpublished) (finding that receiver should be appointed when plaintiff "has a valid final Judgment and has documented fraudulent conduct that has occurred to frustrate [its] ability to collect on the Judgment"). Avon-Wyoming strains credulity in attempting to factually distinguish those cases from the case at bar, pointing to largely meaningless factual distinctions between those cases and the underlying proceeding. These distinctions are irrelevant. These cases all stand for the proposition that courts, both inside and outside of Oklahoma, have used their equitable powers to appoint receivers in circumstances where there exist credible allegations of fraud, mismanagement, and obfuscation—thereby justifying the imposition of a receiver pursuant to 12 O.S. § 1551(6).

Here, the District Court pointed to these exact issues when it first appointed a receiver in September of 2021, noting that appointment of a receiver was proper

"against the backdrop of sustained resistance to payment and improper conduct by Carpenter and his entities", including the use of "hundreds of shell entities to hide assets" or to "improperly shift those assets." (J.A. vol 11 at 2608-09.) The District Court's finding in its January 4, 2024 Order that "these circumstances . . . continue to be present at this time" is thus not erroneous. This is particularly true in light of Mr. Carpenter's continuing attempts to threaten ASG and the insurers and to divert the policies from SDM-Oklahoma and Avon-Wyoming to other entities under his control. (J.A. vol. 18 at 4426-29.)

    d. <u>The District Court did not Abuse Its Discretion by Finding Receivership to be Appropriate.</u>

Avon-WY argues that receivership was improper because Universitas cannot satisfy the relevant considerations for receivership pursuant to 12 O.S. § 1551. In its initial receivership decision, The District Court found that many of these considerations were satisfied, and these considerations continue to apply to the present receivership. The District Court correctly found that Avon-WY's alleged insolvency weighed in favor of receivership.[12] The District Court also found that Avon-WY was likely to defraud Universitas because Mr. Carpenter (Avon-WY's principal and controller) has engaged in extensive fraud to hide assets from his

---

[12] On appeal Avon-WY claims that insolvency alone is insufficient to appoint a receiver. However Universitas also alleges and has demonstrated numerous other justifications to appoint a receiver. *See State ex rel. Barnett v. Creek Realty Co.*, 1933 OK 500 ¶¶ 8-10, 30 P.2d 160, 161-62 (Okla. 1933).

creditors, including Universitas. The District Court further found available legal remedies inadequate because "[t]he orders are, at present, directed to entities rather than individuals and to entities which would otherwise be unable to respond to a judgment . . . ." (J.A. vol. 11 at 2608-09.)

The District Court previously enjoined Avon-WY "from transferring, alienating, concealing, or encumbering any non-exempt property so long as the registered judgment remains unpaid." (J.A. Vol. 8 p. 1959-60, *readopted* J.A. vo. 17 at 4112.) The District Court subsequently found that the injunction was insufficient because of the demonstrable likelihood that Avon-WY would violate this injunction. In so doing, the District Court necessarily found that (1) less drastic equitable remedies were insufficient, and (2) Avon-WY's property was in imminent danger of being lost, concealed, injured, diminished in value, or squandered.

Avon-WY neither critiques the District Court's findings regarding these factors nor suggests that the District Court improperly analyzed these factors— Avon-WY's "argument" thus cannot demonstrate that the District Court abused its discretion by finding that these factors weighed in favor of receivership. *See Bill Barrett Corp.*, 918 F.3d at 772.

### i. Avon-Wyoming's History of Fraud Confirms Receivership was Proper.

As explained, *supra*, both Avon-Wyoming and its principals have a long history of fraudulent activity, including fraud specifically intended to prevent

Universitas from collecting its judgment. Accordingly, the District Court did not abuse its discretion by finding that Avon-WY was likely to engage in fraud. *See Bowles v. Grant Trucking, LLC*, 842 F. App'x 236, 240 (10th Cir. 2021) (unpublished). Moreover, this finding proved to be correct—Mr. Carpenter subsequently attempted to transfer assets to a non-judgment debtor outside the jurisdiction of this Court, and these efforts are continuing now. (J.A. vol. 17 at 4192; vol. 18 at 4428.)

Avon-Wyoming argues that there was no likelihood of fraud because Universitas suggested that it "may not be engaged" in ongoing fraud and that the fraudulent conduct complained of was undertaken by other individuals and entities over a course of fifteen years. (Avon-Wyoming Opening Br. at 48-49.) This argument is meritless as a past history of fraud is sufficient to warrant a receivership. *See, e.g.*, *Big Cat Rescue Corp. v. G.W. Exotic Animal Mem'l Found.*, No. CIV-14-377-C, 2016 U.S. Dist. LEXIS 198365, at *3 (W.D. Okla. Mar. 14, 2016) (unpublished) ("The Court finds that the past fraudulent actions of Defendant . . . requires appointment of a receiver without further delay.") (internal citations omitted).

Avon-WY provides no legal authority to support its specious claim that alleged compliance with an injunction precludes a finding of imminent danger of fraud. Moreover, Avon-WY's claim of compliance with the injunction is false. The

injunction prohibits Avon-WY "from transferring, alienating, concealing, or encumbering any non-exempt property so long as the registered judgment remains unpaid." Avon-WY violated the injunction when Mr. Carpenter, who controls Avon-Wyoming instructed the custodian of the insurance portfolio to transfer assets to a third party outside the Court's jurisdiction and has continued to take steps to attempt the transfer of certain death benefits and policies to the Avon-Connecticut entity. (J.A. vol. 17 at 4192.) Despite Avon-Wyoming's continuing representation that it continues to own its interest in SDM-Oklahoma, it has actively resisted any attempt by Universitas to prevent Mr. Carpenter's attempted alienation of the policies. The positions it has taken are particularly indefensible in light of the fact that such alienation would substantially render Avon-Wyoming's sole asset without value, which would purportedly be against its own interests.

To the extent Avon-Wyoming contends it did not engage in substantial fraudulent activity, this argument is also meritless. (*See e.g.*, J.A. vol. 8 at 1804-10 (discussing Avon-WY's fraudulent conveyance of insurance policies).) Moreover, all three Avon Capital entities are adjudicated alter egos of each other, and thus there is no distinction between these entities. *Sys. Div., Inc. v. Teknek Elecs., Ltd.,* 253 F. App'x 31, 37 (Fed. Cir. 2007) ("[A] corporation and its alter ego are the same entity . . . .").

Avon-WY's argument is also unavailing because Mr. Carpenter clearly controls Avon-WY, and he has an adjudicated history of improperly shifting assets to hide them from his creditors. (J.A. vol. 8 at 1826 ("Try as it might, Avon-WY cannot refute Carpenter's control of each of the Avon entities….").)

ii. *Insolvency Confirms the Receivership was Proper.*

Avon-Wyoming has claimed it is insolvent and unable to satisfy the judgment against it. Moreover, SDM-Connecticut continues to allege that it has merged with and now controls the assets of SDM-Oklahoma. Even though this has been rejected by the District Court, it casts further doubts as to Avon-Wyoming's solvency or ownership of any assets. The District Court correctly found this insolvency weighs in favor of a receivership. *See State ex rel. Barnett v. Creek Realty Co.*, 1933 OK 500 ¶¶ 8-10, 30 P.2d 160, 161-62 (Okla. 1933).

iii. *The Imminent Danger that the Property Will be Removed Confirms the Receivership was Proper.*

The assets at issue are ownership rights, and in turn insurance policies, which can easily be conveyed. *See Hsin-Yi Wu v. Colo. Reg'l Ctr. Project Solaris LLLP*, Civil Action No. 19-cv-02443-RM-STV, 2021 U.S. Dist. LEXIS 38484, at *65 (D. Colo. Mar. 2, 2021) (unpublished) (finding no imminent danger to real property in part because real property "cannot be lost or concealed"). Universitas argued that in light of the transferability of these assets and the history of fraud, a receivership was necessary to preserve the assets. Universitas' argument was prescient, as Mr.

Carpenter and his affiliates in fact did begin to attempt to transfer the policies to SDM-Connecticut, which confirms that the District Court did not abuse its discretion in appointing a receiver. *See Tulsa Torpedo Co. v. Kennedy*, 1928 OK 383 ¶ 14, 268 P. 205, 207 (Okla. 1928) (explaining that there are sufficient grounds for receivership when plaintiff has probable interest in funds and there is danger that property will be removed).

e. The Scope of Receivership Was Proper.

Nor did the scope of Avon-WY's receivership constitute an abuse of discretion. *See SEC v. Wing*, 599 F.3d 1189, 1194 (10th Cir. 2010) ("[T]he district court has broad powers and wide discretion to determine . . . relief in an equity receivership.") (internal citations omitted). The District Court appointed a receiver to manage Avon-WY and provided that the receiver "shall have the powers and duties ordinarily held by court-appointed receivers."[13] (J.A. vol. 18 at 4416.)

The ordinary powers of receivership are "complete jurisdiction and control . . . over all the defendant's property . . . ." *See United States v. Solco I, LLC*, 962 F.3d 1244, 1264 (10th Cir. 2020) (internal citations omitted). Avon-Wyoming has been adjudicated as an alter ego judgment debtor. SDM-Oklahoma is Avon-Wyoming's property, and SDM-Oklahoma's operating agreement allows Avon-

---

[13] As Avon-Wyoming's sole asset is an ownership interest in SDM-Oklahoma, which is in Oklahoma a receivership over Avon-Wyoming is proper under Oklahoma substantive law. *See Brentall*, 29 P.2d at 121 (Okla. 1934).

54

Wyoming to remove SDM's manager "at any time, with or without cause." (J.A. vol. 20 at 4791 ¶ 3.05.) The receiver's ability to replace SDM's manager is a straightforward result of SDM's operating agreement, which the receiver exercised through the ordinary powers of receivership. Thus, the District Court did not abuse its discretion in determining the scope of the receivership.

## CONCLUSION

The District Court's rulings should be affirmed for the aforementioned reasons, and in order to ensure that the assets at issue remain preserved pending the disposition of the related appeals.

<u>/s/Joseph L. Manson III</u>
Joseph L. Manson, III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron Street
Alexandria, VA 22314
Telephone: (202) 674-1450
Facsimile: (703) 430-1642
jmanson@jmansonlaw.com

*Attorney for Petitioner-Appellee*
*Universitas Education, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Universitas does not believe oral argument would materially assist the Court in deciding the issues before the Court.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,981 words, as determined by the word-count function of Microsoft Word, excluding the glossary required by 10th Cir. R. 28.2(C)(4) and the items listed in Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word using a 14-point Times New Roman Font.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2024, I electronically transmitted the foregoing using the ECF System for filing and transmittal of Notice of Electronic Filing to the all the ECF registrants on record, and will mail seven (7) hard copies to the Court after it is accepted for filing.

/s/Joseph L. Manson III